UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
Innovative Sports Management, Inc. d/b/a Integrated Sports Media,

                                 Plaintiff,

      -against-

JESSENIA BURGOS, Individually, and as officer, director, shareholder and/or principal of BARU CORP d/b/a RIKO PERUVIAN,

and

BARU CORP d/b/a RIKO PERUVIAN,

                                 Defendants.
-----------------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Civil Action No.
1:23-CV-00332-AMD-SJB

TO THE HONORABLE COURT,

BY COUNSEL, NOW COMES PLAINTIFF, Innovative Sports Management, Inc. d/b/a Integrated Sports Media, and upon the affidavit of its president, Doug Jacobs, in support of said application, the Attorney affirmation and the exhibits attached thereto, moves this Court for an Order granting the entry of default judgment against the Defendants.

**BRIEF SUMMARY**

The Summons and Complaint in this action were duly served upon the Defendants JESSENIA BURGOS, Individually, and as officer, director, shareholder and/or principal of BARU CORP d/b/a RIKO PERUVIAN on February 11, 2023 and on BARU CORP d/b/a RIKO PERUVIAN, on January 31, 2023; see ECF Nos. 6 and 7, respectively. Defendants failed to plead or otherwise appear in this action and default was entered by the Clerk in respect to both Defendants on April 5, 2023, via ECF No. 9.

Pursuant to the Federal Rules, Plaintiff now submits the instant motion for default judgment and award of damages against the Defendants.

**FACTS**

The facts are fully set forth in the accompanying exhibits and Plaintiff's underlying Complaint. Plaintiff brought this action on January 18, 2023 alleging that Defendants, knowingly and willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §553 or §605. The Complaint, ECF document number 1, alleges that the Defendants unlawfully and willfully intercepted and exhibited the broadcast for the South American World Cup Qualifiers "SAWCQ" : Peru vs. Paraguay PPV Event on March 29, 2022 (hereafter, the "Program") within Defendants' commercial establishment located at 45-06 Greenpoint Ave, Queens, NY 11104 at the time of its transmission on March 29, 2022, in violation of Plaintiff's rights under §553 and/or §605, willfully, and for purposes of direct or indirect commercial advantage or private financial gain.

Service of the Summons and Complaint was perfected on Defendant BARU CORP d/b/a RIKO PERUVIAN, by delivering and leaving a Copy of the Summons and Complaint with Nancy Dougherty, authorized agent for the corporation in the Office of the Secretary of State, on January 31, 2023, and on Defendant, JESSENIA BURGOS, via sub-service, on February 11, 2023, after attempting to effectuate personal service on the Defendant on three other occasions. The proofs of service were filed with the Court on March 6, 2023, via ECF numbers 6 and 7, respectively.

As the Complaint and the Affidavit of Plaintiff's President, Doug Jacobs, of Innovative Sports Management, Inc. d/b/a Integrated Sports Media, submitted

simultaneously, both reveal, Plaintiff obtained the rights distribute and publicly perform the event to commercial establishment via agreement on June 3, 2021 between GOLTV LATIN AMERICA S.A. and Innovative Sports Management, Inc. d/b/a Integrated Sports Media. A redacted ( as to financials) version of the Media Rights Agreements attached as **Exhibit "A"** to this memorandum, licensing the Plaintiff exclusively  for the United States territory to transmit, distribute and exhibit the March 29, 2022 "Program," which was broadcasted either by encrypted broadcast signal, closed circuit television or by encrypted satellite signal or broadband. For a fee, commercial establishments could legitimately receive the broadcast, enabling them to view the program by contracting with the Plaintiff. In the same agreement, Plaintiff was granted the right to assert independent claims against any violators under the Federal Communications Act . See Par 10 (d) Exhibit A.

In order for a commercial establishment to obtain lawful authority to exhibit the Program, a license would have to be issued by Plaintiff. However, through deliberate and willful acts, potential purchasers, such as the Defendants herein, illegally obtained the subject Program without paying the Plaintiff for the rights to commercially exhibit said event.

In order to address and combat signal piracy, Plaintiff hired investigative agencies to retain auditors to visit various locales on the night of March 29, 2022, to determine whether any establishments were intercepting and publicly displaying the Program without authorization from, or payment to, Plaintiff. Among the locations the auditors observed exhibiting the Program without authority to do so was that of the Defendants' BARU CORP d/b/a RIKO PERUVIAN at 45-06 Greenpoint Ave, Queens, NY 11104.  Defendants never obtained any  authority or license from Plaintiff, the exclusive distributor in the United States

for for commercial distribution, to publicly exhibit the Broadcast on March 29, 2022.

Defendants' display of the Program was verified by auditor, Christopher Briecke, whose site inspection form is attached to Plaintiff's affidavit as Exhibit "C," where he saw two (2) television sets of which was exhibiting the Program to patrons. Although the auditor's affidavit is silent as to the amount of patrons at the establishment at the time of the event, the auditor the estimated seating capacity of the establishment to be 50-100. During the course of his visit to the Defendants' establishment, the auditor recorded video of Plaintiff's programming being exhibited within the Defendants' establishment. The video is attached as the following Dropbox link:

https://www.dropbox.com/s/3q5428z9ts4tgcy/Riko%20Peruvian%20Video.m4v?dl=0

After proper service, the Defendants herein did not answer or file a responsive pleading, nor did they request an extension of time to file. Said Defendants are not infants or incompetents. Upon information and belief, the Defendants are not presently in the military service of the United States.

## NATURE OF DEFAULT

Before obtaining default judgment, a plaintiff must obtain entry of default by showing the defendant has failed to plead or defend. Fed. R. Civ. P. 55(a). After entry of default, the court or clerk may enter default judgment. Fed. R. Civ. P. 55(b).

The Second Circuit has held, default judgment entered on well-pleaded allegations of a complaint establishes a defendant's liability and those allegations in the complaint are deemed true. Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F.Supp.2d 108, 112 (E.D.N.Y. 2011); United States v. Coleman, 2018 WL 1100438 at 3 (E.D.N.Y. 2018); Time

Warner Cable of New York City v. Googies Luncheonette, 77 F.Supp.2d 485, 487 (S.D.N.Y. 1999). The allegations are to be accepted as true, except those relating to the amount of damages. Bricklayers & Allied Craftworkers Local 2, Albany Pension Fund v. Moulton Masonry & Const., LLC, 779F.3d 182, 189 (2d Cir. 2015); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir.1997).

The allegations are to be accepted as true, except those relating to the amount of damages. It is respectfully submitted that this Court rely on Plaintiff's submissions.

### EVIDENTIARY HEARING/SUBMISSIONS

In considering a motion for default judgment, the court may conduct a hearing to conduct an accounting, determine the damages amount, establish with evidence the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b) (2).

This circuit has held that, affidavits and documentary evidence provide a sufficient basis for an award of damages, therefore no evidentiary hearing is required. Blume Enter., LLC. v. 1706 ENY Corp., 2018 WL 4863648 at 3 (E.D.N.Y. 2018). A damages inquest may be held on the basis of documentary evidence alone as long as the court has ensured that there was a basis for the damages specified in the default judgment. CA, Inc. v. Network Solutions Provider, Inc., 2018 WL 6834472 at 1 (E.D.N.Y. 2018) citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). It is respectfully submitted that this Court rely on Plaintiff's submissions.

### JURISDICTION

Before entering default judgment, a court must ensure it has subject-matter jurisdiction. See; Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (courts have independent obligation to

ensure subject-matter jurisdiction). "A court may not enter default judgment "unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process" United States v. Coleman, No. CV157284DRHAYS, 2018 WL 1100438, at *4 (E.D.N.Y. Jan. 26, 2018), report and recommendation adopted, No. 15-CV-7284(DRH)(AYS), 2018 WL 1100366 (E.D.N.Y. Feb. 20, 2018). All defendants in this action have been properly served and this Court has both personal and subject-matter jurisdiction over these defendants as these claims arise under federal law, specifically 47 U.S.C.S. §§ 605 and 553.

## ELECTION OF §§ 605 and 553

Plaintiff's Complaint contains allegations arising under 47 U.S.C.S. §§ 605 and 553. Section 605(a) prohibits the unauthorized interception or receipt of certain radio broadcasts, and has been interpreted to include the unauthorized interception of digital satellite television transmissions. Section 553(a) prohibits the unauthorized interception or receipt of certain cable communication. Zuffa, LLC v Shin, 2021 US Dist LEXIS 150001, at *1 [D Md Aug. 10, 2021, Civil Action No. TDC-19-2768]. As a result of Defendants' failure to plead or otherwise appear in the instant action, Plaintiff is unable to determine whether Defendants' unlawful reception of Plaintiff's Program falls conclusively under § 605 or §553. While it is unclear whether the instant claim falls under § 605 or §553 due to lack of discovery, Courts have routinely held

> "…it is not necessary to determine exactly which statute was violated. Instead, it is sufficient to conclude that [Plaintiff] Zuffa's allegation that the [Defendant] Restoration Room intercepted and showed the Broadcast without Zuffa's authorization establishes that the Restoration Room violated either § 605 or § 553, or both. See J & J Sports Prods. v. Rumors Inc., No. CCB-14-2046, 2014 U.S. Dist. LEXIS 164199, 2014 WL 6675646, at *2 (D. Md. Nov. 21, 2014); cited by Zuffa,

LLC v Shin, 2021 US Dist LEXIS 150001, at *7 [D Md Aug. 10, 2021, Civil Action No. TDC-19-2768]).

Plaintiff's Complaint alleges in pertinent part that:

"There are multiple illegal and unauthorized methods of accessing the Broadcast, including but not limited… splicing an coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment, de-crypt, unscramble and receive the closed circuit, "IPTV", cable or satellite Broadcast; (2) commercially misusing residential cable, satellite or streaming by registering same as a residence when it is, in fact, a business… Each of the above described methods would allow Defendant to access the Broadcast unlawfully and without Plaintiffs authorization. Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendant obtained the Broadcast. However, it is logical to conclude that Defendant utilized one of the above described methods or another to intercept and exhibit the Broadcast…". Compl. ¶ 25.

As stated in its Complaint, Plaintiff alleged that the Defendants' unlawful interception either originated via satellite transmission or cable interception. Since, Defendants' failed to appear or plead in the instant action, Plaintiff's allegations are deemed true and since Plaintiff alleged violations under both §§ 605 and 553, Plaintiff may elect to recover under either statute. When a court determines that a defendant's conduct has violated both §§ 605 and 553 of the Communications Act, a plaintiff may recover damages only under one of those sections. Cablevision Sys. Corp. v Glen Mini Mkt. 11, 1997 US Dist LEXIS 3533, at *1 [SDNY Mar. 21, 1997, 95 Civ. 10436 (DAB)(RLE)].

Plaintiff hereinafter elects to recover damages under § 605.

### LIABILITY UNDER 47 U.S.C. §605 – Count 1 of Complaint

47 U.S.C. §605 allows a plaintiff to elect to recover either actual damages and lost profits, or statutory damages. 47 U.S.C. §605(e)(3)(C)(i)(I). Through Defendants' admissions,

Defendants have admitted to the interception of radio and satellite communication and therefore Plaintiff has established the elements of 47 U.S.C. §605 and elects to recover statutory damages under that statute.

Under §605(a) liability hinges on the interception of radio communications and its divulgence to any person. Defendants herein, by their default, have admitted that, without authorization from Plaintiff, they illegally intercepted the scrambled transmissions of the Program. The Defendants have also admitted Plaintiff has rights to the Broadcast including the right to distribute same and Defendants never obtained the proper authority or license from Plaintiff, or its authorized agent for commercial distribution, to publicly exhibit the Broadcast on March 29, 2022. The Defendants have also admitted to knowingly and willfully intercepting the programming and offering it to patrons of the establishment for private financial gain or commercial advantage.  Defendants have admitted that JESSENIA BURGOS was the individual with close control over the internal operating procedures and employment practices of defendants as well as the individual with supervisory capacity and control over the activities occurring within the Defendants' establishment on March 29, 2022. Therefore, by their default, the Defendants herein have admitted all facts necessary to establish liability, and Plaintiff is entitled to a default judgment pursuant to FRCP 55(b). Plaintiff elects to recover under 47 U.S.C. §605(a) and is seeking maximum statutory damages under §605(e)(3)(C)(i)(II) in the Courts discretion for the sum of $10,000.00 for Defendants public exhibition of Plaintiffs program without authorization or a license.

Pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), the Defendants are indebted to Plaintiff for the unlawful and willful exhibition for commercial advantage of the closed circuit television

signal of the Program on March 29, 2022. Pursuant to the above, Plaintiff seeks the statutory amount of $10,000.00 in damages.

## WILLFULLNESS

The Defendants have admitted through their default that their agents, servants, workmen or employees, with full knowledge that said closed circuit program was not to be received and/or exhibited by entities unauthorized to do so, did, at the time of its transmission, exhibit the closed circuit program at her principal place of business willfully, and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue. There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain.

> "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."

Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999.

In a similar case the court stated:

"[i]n order for [defendant] to receive the closed circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way, so as to receive and view the scrambled transmission."

Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F.Supp. at 111.

Through Defendants' own admissions and as stated by the court in J & J Sports Prods. Inc. v. Welch, this exhibition was wilfully and done for commercial advantage and financial gain, because there is no possible way this program could have been inadvertently intercepted:

> "Nonetheless, plaintiff is entitled to a further enhancement of the damages

9

award because the record demonstrates that the defendants affirmatively and willfully intercepted the Event for financial gain, and that there is no way that the defendants could have inadvertently intercepted plaintiff's broadcast."

J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 KAM, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010).

## RECIDIVIST PIRATE

This is not the first instance in which audits conducted by the Plaintiff revealed that the Defendants' unlawfully intercepted Plaintiff's Program. Defendant, JESSENIA BURGOS, is also the owner of "Riko Peruvian Cuisine" located at 78-14 Roosevelt Ave., Jackson Heights, NY 11372. On May 28, 2019, JESSENIA BURGOS settled a prior piracy claim and paid a settlement to the Plaintiff.

### a.  2019 AUDIT

On March 22, 2019, it was revealed by an auditor for the Plaintiff, that the Defendant, "Riko Peruvian Cuisine", had infringed upon the Plaintiff's broadcast rights within their commercial establishment located at 78-14 Roosevelt Ave., Jackson Heights, NY 11372. Please find a copy of auditor Jose Bautista's Site Inspection, with exhibits, attached hereto as **Exhibit "B"**. Plaintiff sent a claim letter dated April 22, 2019 to the Defendants informing them of their identified violation and that the Plaintiff would be pursuing claims against them for the unlawful interception of Plaintiff's program. Please find a copy of Plaintiff's written demand to the Defendant attached hereto as **Exhibit "C"**. In the 2019 piracy claim, Integrated Sports Media negotiated with and resolved the claim with JESSENIA BURGOS, on behalf of herself and the Defendant Corporation and on May 28, 2019 entered into a confidential settlement agreement wherein the parties agreed to resolve the dispute. Due to the confidential nature of the terms, a heavily redacted version of this agreement is being attached hereto as

**Exhibit "D"**, showing it was signed by the Defendant JESSENIA BURGOS, and verifying the fact that the Defendant was not an innocent violator, but fully aware that displaying Plaintiff's broadcast without a license will cause her to be in violation of federal law subjecting her to liability.

The infringers in each instance were the same Defendants in the instant action. This is made abundantly clear by the fact that a.) both the Defendant corporations used the name "Riko Peruvian Cuisine" b.) the Defendants had (have) the same principal, Defendant JESSENIA BURGOS and c.) the principal listed on each of the liquor licenses for the respective corporations is JESSENIA BURGOS. Please find the secretary of state information for "Riko Peruvian" located at 78-14 Roosevelt Ave., Jackson Heights, NY 11372 attached as **Exhibit "E"** and the liquor licenses for both locations attached as **Exhibit "F"** which show that each has an assigned principal of JESSENIA BURGOS and both use the trade name "Riko". As such, the Defendants willfully infringed upon the Plaintiff's rights on at least two occasions.

### ENHANCED DAMAGES FOR WILLFULNESS

An additional award for willfulness will put violators on notice that it costs less to obey the laws than to violate them. Telebrands v. HM Import USA Corp., 2012 WL 3930405 at 8 (E.D.N.Y. 2012); Time Warner Cable of New York City, 77 F.Supp.2d at 490-91 quoting Rodgers v. Eighty Four Lumber Co., 623 F.Supp. 889, 892 (W.D.Pa.1985).

Multiple District Courts, have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and to defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585-588-90 (E.D.N.Y. 1997); Joe Hand Prom., Inc.

11

v. M&J Ballpark, Inc., 2016 WL 4750087 at 2 (E.D.Mich. 2016). Additionally, Defendants have also admitted that they knowingly and willfully intercepted Plaintiff's Program, and that the willful interception and exhibition was for private financial gain or commercial advantage. It is made abundantly clear that the Defendants' had reason to know better based upon their previous infringement and unlawful interception of Plaintiff's Program. Defendant obtained financial gain by their failure to pay the requisite commercial license fee and exhibiting the program to their patrons within their establishment. As seen in the site inspection video, the eye witness auditor recorded multiple patrons and estimated the capacity as between 50-100 people. As shown in Exhibit "C" of the affidavit of Plaintiff, the minimum licensing fee would have cost defendants $1,000.00 for this event. As such, Defendants' willful liability for violation of said statute, 47 U.S.C. §605 has been established and enhanced damages should be awarded accordingly.

Deterrence of future piracy is the legislative intent of 47 U.S.C. §605; to merely require the offending pirate to pay a nominal fine would do nothing to accomplish this objective of the statute. As stated in the Congressional Record of 1984:

> "In amending existing § 605, it is intended to leave undisturbed the case law that has developed confirming the broad reach of section 605 **as a deterrent against piracy of protected communications**." 130 CONG. REC. S14287 (daily ed. Oct. 11, 1984).

The amount of damages to be awarded rests in the sound discretion of the Court pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), and 47 U.S.C. §605(e)(3)(C)(ii).

The kind of piracy perpetrated by the Defendants unfairly prejudices willing and paying customers who have purchased the rights to display the Program within their commercial establishment. By having to purchase the Program, paying customers of the Plaintiff are often

forced to charge a cover fee to their patrons to watch the Program within their establishment so as to mitigate the cost of the licensing fee. Pirates, like the Defendants, who subvert Plaintiff's proprietary rights, are able to offer the same Program without having to charge their patrons a cover fee and as a result of such, are the benefactors of an unfair commercial advantage over the competition. To put it simply, if a willing patron residing within the Five Boroughs wants to watch the Program offered by the Plaintiff and the patron has the option between two local establishments, one of which requires a cover charge and the other which does not, the patron is more likely to choose the establishment which does not require the cover charge, as there is no cost for admittance.

As such, Plaintiff requests that the Court in its discretion award damages for Defendants willfullness in the amount of Twenty Thousand ($20,000.00) Dollars in enhanced damages. Plaintiff's product, the licensing of sporting events to establishments that want to exhibit exciting events as they occur, is less valuable when pirates exhibit the events for free to patrons who would otherwise be in the establishments of Plaintiff's legitimate licensees.

If the penalty is only the license fee there is no deterrent on Defendants. It would simply say to the Defendants that it is alright to steal, provided that if you get caught, then you must pay what you would have paid if you legally obtained the licenses to show the Program. Plaintiff respectfully submits that it is entitled to enhanced damages as the aforementioned demonstrates that the defendants acted willfully. Since this is not the first instance of a willful disregard of Plaintiff's rights by the Defendants', this Court should consider an increased damage award that it would normally not entertain. Typically, a Court in this Circuit will award treble damages of the licensing fee to a Plaintiff upon a showing of willfulness. This is the case

when Defendants are found to have unlawfully exhibited a program and to have advertised the program ahead of such unlawful interception. See Joe Hand Promotions, Inc. v Boyd, 2020 US Dist LEXIS 16554 [WDNY Jan. 30, 2020, No. 19-CV-6254-FPG]; citing J & J Sports Prods. v Benson, 2007 US Dist LEXIS 21779 [EDNY Mar. 27, 2007, No. CV-06-1119 (CPS)]). Defendants' infringed upon Plaintiff's rights with actual and verifiable knowledge that they could not do so without obtaining the proper license from the Plaintiff. This is not the case of a company who genuinely made a mistake by obtaining a residential license for a commercial display of the program. Rather, this is an instance in which the Defendants' knew from the settlement of the claim in 2019 with no question of uncertainty that in order to display the Program lawfully, they had to obtain a commercial license from the Plaintiff.

Under §605(e)(3)(C)(ii), Plaintiff could be entitled to an award of enhanced damages for a willful violation in an amount within the Courts discretion up to the sum of One Hunderd Thousand ($100,00.00) Dollars. Plaintiff seeks enhanced damages herein in the amount of Twenty Thousand ($20,000.00) Dollars.

Plaintiff's also move this court for costs and attorney's fees in the total amount of FOUR THOUSAND TWO HUNDRED TWENTY THREE DOLLARS and FIFTY CENTS ($4,223.50) pursuant to U.S.C. §605(e)(3)(B)(iii). Plaintiff's entitlement to the foregoing is explained in more detail in the Attorney Affirmation in Support of Costs.

## CONCLUSION

Plaintiff is entitled to a default judgment against Defendants holding them liable for a sum, in the discretion of the court.

Plaintiff prays that this Motion be heard on submission.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under §605 (a) on COUNT I of the Plaintiff's complaint against the Defendants, *jointly and severally*, as follows:

1) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); and

2) TWENTY THOUSAND DOLLARS ($20,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

3) FOUR THOUSAND TWO HUNDRED TWENTY THREE DOLLARS and FIFTY CENTS ($4,223.50) pursuant to 47 U.S.C. §605(e)(3)(B)(iii) and pursuant to 17 U.S.C. §505, in the discretion of the Court, for total costs and attorney's fees.

Dated: June 1, 2023
Ellenville, New York

**Innovative Sports Management, Inc. d/b/a Integrated Sports Media**

By: /s/Alexander Lonstein
Alexander Lonstein, ESQ.
Attorney for Plaintiff
LONSTEIN LAW OFFICE, P.C.
190 South Main Street: P.O. Box 351
Ellenville, NY 12428
Tel: (845) 647-8500
Fax: (845) 647-6277
Email: Legal@signallaw.com
*Our File No. ISM22-16NY-02*

TO:

JESSENIA BURGOS
139-51 Perishing Crescent
Jamaica, NY 11435

BARU CORP d/b/a RIKO PERUVIAN
45-06 Greenpoint Ave.
Queens, NY 11104

15