UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------

Innovative Sports Management, Inc. d/b/a Integrated Sports Media,

                              Plaintiff,

    -against-

JESSENIA BURGOS, Individually, and as officer, director, shareholder and/or principal of BARU CORP d/b/a RIKO PERUVIAN,

and

BARU CORP d/b/a RIKO PERUVIAN,

                              Defendants.
-----------------------------------------------------------------

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Civil Action No.
1:23-CV-00332-AMD-SJB

| | |
|---|---|
| STATE OF NEW JERSEY | } |
| | } ss |
| COUNTY OF BERGAN | } |

I, Doug Jacobs, being duly sworn, deposes and states the following:

    1.    I am President for Innovative Sports Management, Inc. d/b/a Integrated Sports Media and I am fully familiar with the facts and circumstances herein based upon review of the contents of our file as well as through communication with counsel.

    2.    I make this Affidavit in support of Plaintiff's request to recover statutory damages, including costs, attorneys' fees, and interest, as part of Innovative Sports Management, Inc. d/b/a Integrated Sports Media's request for a judgment by default.

3. Innovative Sports Management, Inc. d/b/a Integrated Sports Media holds the copyright and exclusive Broadcast and commercial distribution rights to commercial establishments for the Innovative Sports Management, Inc. d/b/a Integrated Sports Media Peru vs. Paraguay Program, including all undercard matches as well as all pre-produced content that comprised part of the live Broadcast which occurred on March 29, 2022 via closed-circuit television, encrypted satellite signal and various streaming technologies which allow it to be streamed via the internet. Some of these streaming technologies include but are not limited to Internet Protocol Televisions ("IPTV"), Streaming Platforms, and Mobile Applications. Most, if not all, streaming involves one of five main protocols.

HTTP Live Streaming (HLS)

Real-Time Messaging Protocol (RTMP)

Secure Reliable Transport (SRT)

Dynamic Adaptive Streaming over HTTP (MPEG-DASH)

Microsoft Smooth Streaming (MSS)

(Hereinafter referred to as the "Broadcast"). The Broadcast originated via satellite, Wi-Fi, IPTV, or other encrypted broadcast technology uplink from the event venue and transmitted to cable, satellite, IPTV, and other streaming platforms to Commercial and Residential customers nationwide. Our company marketed the Broadcast to commercial establishments in the State of New York and elsewhere for a license fee as it was copyrighted, proprietary content.

4. For a commercial establishment, Bar, Tavern, Restaurant, or other for-profit business or organization to obtain lawful authority to exhibit the Broadcast to its patrons or the public, a fee would have to have been paid to buy a license and contract for the authorized

commercial exhibition from Innovative Sports Management, Inc. d/b/a Integrated Sports Media (hereinafter referred to as "Plaintiff").

5. The license fee charged by my company is based upon the size of the establishment and its fire code occupancy. The official rate card issued by Plaintiff is attached as Exhibit "A."

6. My company maintains a list of authorized and legal locations that paid the required fee to exhibit the Broadcast ("Legal List"). The Legal List for the State of New York is attached as Exhibit "B."

7. To comply with the requirements of the event promoter or content creator Innovative Sports Management, Inc. d/b/a Integrated Sports Media, was required to ensure that commercial locations that did not pay a license fee were identified, informed, and appropriately penalized in compliance with Federal, State and Local laws relating to such illegal activity. To that end, we retained auditors to canvas and identify establishments exhibiting the Broadcast without authorization from Innovative Sports Management, Inc. d/b/a Integrated Sports Media, thereby making those exhibitions unauthorized.

8. To ensure that only unauthorized locations are audited, the Legal List of businesses is provided to auditors before the Broadcast.

9. On March 29, 2022 Defendants, JESSENIA BURGOS & BARU CORP located at 45-06 Greenpoint Ave, Queens, NY 11104 did not purchase a license to obtain the Broadcast from Innovative Sports Management, Inc. d/b/a Integrated Sports Media, Inc. and did exhibit it to its customers in a commercial establishment called RIKO PERUVIAN.

10. According to our files and documents that I reviewed in preparing this affidavit, Christopher Briecke, one of the auditors, visited RIKO PERUVIAN on March 29, 2022 located at 45-06 Greenpoint Ave, Queens, NY 11104 at approximately 7:35 pm.

11. As evidenced by the Site Inspection, Mr. Briecke entered and observed 2 televisions exhibiting the Broadcast to patrons in RIKO PERUVIAN with an auditor estimated capacity of 50-100.

The auditor's Site Inspection and Supplemental Affidavit attesting to these facts are attached hereto as Exhibit "C." The auditor also took photos while inside and outside of RIKO PERUVIAN verifying the commercial exhibition of the Broadcast. Those photos are attached hereto as Exhibit "D." During the course of the visit, Mr. Briecke also video recorded the live exhibition of the Broadcast within RIKO PERUVIAN. The video can be viewed at the following Dropbox hyperlink, which is listed below and shall serve as part of this Affidavit:

[RIKO PERUVIAN SITE INSPECTION VIDEO 1](#)

Defendant's exhibition of the Broadcast was without authorization or license from Innovative Sports Management, Inc. d/b/a Integrated Sports Media; therefore, I understand it violated the Piracy Statutes of the Federal Communications Act and The Federal Copyright Act.

12. I do not believe Broadcast can be "mistakenly or innocently" received or intercepted.

13. Upon information and belief, Defendants and/or their agents, servants, workmen, and/or employees intercepted, improperly misrepresented the commercial nature of the establishment and acquired an illegal stream or retransmission using screencasting or other technology used to geo-shift or circumvent otherwise avoid purchasing a commercial license

from Innovative Sports Management, Inc. d/b/a Integrated Sports Media, resulting in their commercial exhibition of Broadcast in violation of my companies rights.

14. As mentioned above, numerous ways to acquire the Broadcast signal illegally exist. They include, but are not limited to, "traditional" piracy such as (1) splicing a coaxial cable with one carrying the Broadcast from another commercial or residential or redirecting a wireless signal from an adjacent residence into a business establishment, de-crypt, unscramble and receive the closed circuit, "IPTV," cable or satellite Broadcast; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence into a business. Recently emerging over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet, such as Broadband or internet broadcast; or Live Social Media Streaming ("Nano-Piracy") are additional methods to pirate the Broadcast without subscribing to a traditional cable, satellite, or IPTV services such as Comcast, DIRECTV, YouTube TV, Hulu, Roku and a seemingly endless new set of options to purchase content via traditional or online technology all readily available to anyone with a Smartphone, Smart TV or Computer. This smorgasbord of new technology allows pirates to misuse residential broadcasting feeds from anywhere in the world.

15. The above methods can provide Defendants access to the Broadcast unlawfully and without Innovative Sports Management, Inc. d/b/a Integrated Sports Media's authorization. By defaulting, Defendants have avoided providing discovery, so it is nearly impossible to determine how the Defendants obtained the Broadcast. However, it is logical to conclude that the Defendants utilized one of the above-described methods or another to intercept and exhibit the

Broadcast without agreeing to obtain it lawfully from my company, the legal rights holder for commercial exhibition.

16. There has been undisputed erosion of commercial sales of proprietary programming, which undoubtedly results from the piracy of programs and copyright violations by unauthorized and unlicensed establishments.

17. My company has invested substantial sums of money in marketing and promoting this Broadcast. Without the identification and prosecution of pirates, Innovative Sports Management, Inc. d/b/a Integrated Sports Media's legal sales will erode significantly, paying customers are subject to unfair competition, and ultimately Plaintiff's business will suffer irreparable harm.

18. Turning to this particular case, I am advised by counsel that the Court has the discretion in awarding damages for these harmful, unscrupulous, and illegal acts.

19. It is respectfully submitted to the Court that the Defendant's piracy or copyright violation not only damages our business it also harms our lawful customers in the State of New York, who have paid the licensing fees for the Broadcast and are unable to recoup their investment due to piracy and copyright violation by establishments such as the Defendants who compete unfairly with lawful customers.

20. We, therefore, humbly ask this Court to grant a significant award of damages since Defendants' actions were per se intentional and are impossible without willful and deliberate acts or omissions and to deter future piracy by the imposition of maximum damages.

_____
Doug Jacobs
President
Innovative Sports Media, Inc

Sworn to before me on this 10 day
Of April, 2023.



_____
Notary Public- State of New Jersey

-7-